John E. Howell, Respondent, v. Edwin Mills et al., Appellants.

An order though affecting a substantial right cannot be reviewed in this court if it is a matter resting in the discretion of the court granting the order. The reason for not entertaining such an appeal rests not upon the restrictions of the Code, but upon the character of the court and its limited jurisdiction, confining it to the review of questions of law only, except where specially authorized. (Grover, J., dissenting.)

Where the property rights of infants are concerned, courts will exercise the most vigilant care in protecting their interests, and will hold guardians and all who are engaged in managing or disposing of their property to a rigid adherence to principles of good faith not only, but to a strict performance of every duty.

A collusive arrangement to prevent competition at a judicial sale and a sale in pursuance thereof to the injury of an infant is a fraud in law, whether made with or without the consent of his guardian *ad litem*, and subsequent mortgagees and purchasers with knowledge of the fraud can gain no advantage therefrom.

These questions are not matters of discretion, and when involved in an order they may be reviewed here the same as if presented upon exceptions. An infant is entitled to the protection of the court upon a summary application to set aside such a sale as well as in a formal action.

The right to relief once established, it is not within the discretion of the

court absolutely to reject the summary application and remit the infant to his action.

A refusal to grant relief upon a summary application is not ordinarily a final adjudication of the merits of the controversy. It will bar another summary application unless leave is given to renew, but will not affect any other remedy. A provision, therefore, in an order denying relief upon such an application, which assumes to limit the rights of the parties to bring an action for relief either by prescribing terms or limiting the time for the commencement of such an action is erroneous.

Judgment was obtained in a partition suit directing a sale of certain premises in which "defendant E. M. owned a life estate, G. W. H. (the original plaintiff) and defendant W. M. H. (then and still a minor) owning the remainder. The present plaintiff was attorney for G. W. H., and by a collusive arrangement, devised by him, the premises were sold and bid off by G. W. H. for about a sixth of their value. Upon receipt of the referee's deed, the purchaser executed mortgages upon the premises to the amount of $9,500. These mortgages were subsequently foreclosed, and upon the sale the premises were bid off and conveyed to plaintiff. Upon motion, thereafter, on the part of the defendants, to vacate the sale in the partition suit and for a re-sale, the motion was denied without prejudice to defendants resorting to other proceedings for relief, if upon payment or tender to plaintiff of the amount paid by him for the premises, with interest and taxes, within sixty days after date of order plaintiff should refuse to accept and convey, etc. *Held,* that the order, so far as the infant defendant was concerned was error, and that so much thereof as required defendants to pay the amount specified to plaintiff as a condition of other relief and as limited the time therefor, was, as to the other defendant, also error; that these were questions of legal right, not matters of discretion, and therefore so much of the order was reviewable here; that the portion of the order denying the application of E. M. for a re-sale was in the discretion of the court; the appeal from so much thereof, therefore, dismissed.

(Argued May 20, 1873; decided September 23, 1873.)

Appeal from order of the General Term of the Supreme Court in the second judicial department, affirming an order of Special Term denying motion of defendants for a re-sale, etc.

This was an action for the partition and sale of lands in Orange county, N. Y., brought originally by George Walter Hurtin.

The papers on this motion showed the following facts:

William Hurtin died on the 4th day of November, 1858, the owner of and in possession of the premises in question,

leaving a last will and testament, by which he devised the same to Alfred D. Hurtin during his natural life, remainder to the original plaintiff, George Walter Hurtin, and to defendant, William Mills Hurtin; if one died without leaving children, the survivor to have the whole. Alfred D. Hurtin, the life tenant, went immediately into possession. He subsequently mortgaged his interest in the property; the mortgage was foreclosed, and the defendant, Edwin Mills, became the purchaser. On the 10th day of August, 1866, the complaint and *lis pendens* were filed in this action, John E. Howell, the present plaintiff, being attorney for plaintiff. William Mills Hurtin was then and still is an infant, who appeared by guardian, and such proceedings were had that judgment of partition and sale were entered January 28, 1867. The referee, on the 22d day of March, 1867, sold the lands mentioned in the complaint herein to the plaintiff for $3,000. This was effected by a collusive arrangement between the parties. The referee gave plaintiff a deed of the same on the first day of April following, and at the same time the plaintiff executed two mortgages upon the premises amounting to $9,500. The premises were worth, at the time of the sale about, $18,000. That said mortgages were foreclosed by the mortgagees, John E. Howell being their attorney; and the said premises were sold under decree therein about June, 1869, and were bid in by John E. Howell, who now has the referee's deed for same, and claims thereunder an absolute fee. An appeal was taken from the judgment of partition and sale to the General Term, where the judgment was affirmed, and an appeal taken to the Court of Appeals, which is now pending. John E. Howell, the present plaintiff, was substituted for the original plaintiff. Further facts appear in the opinion. The order at Special Term was to the following effect:

"It is ordered that the motion to vacate such sale and for a re-sale of such premises be and the same is hereby denied, with ten dollars costs of opposing motion, to be paid by the defendants to the plaintiff, without prejudice to the defend-

ants or either of them to resort to any proper proceeding for relief, if, upon tender or payment by them to said Howell, plaintiff, of the amount paid by him for said premises and the taxes paid by him thereon, and the lawful interest upon the several amounts so paid, within sixty days after the date of this order, said Howell shall refuse to accept such tender and payment, and to convey to such defendants, or either of them, or to such person as they shall elect to receive such conveyance, the premises described in the said judgment."

*Gilbert O. Hulse* for the appellants. The order is appealable, and may be heard as a motion. (Code, § 11, sub. 4; Rule 20 Ct. Appeals; *King* v. *Platt*, 37 N. Y., 155; *Tripp* v. *Cooke*, 26 Wend., 149.) Defendants have no other remedy. (*McCotter* v. *Jay*, 30 N. Y., 80.) Defendants are entitled to have a re-sale ordered. (*Lefever* v. *Laroway*, 22 Barb., 167; *Gould* v. *Gager*, 18 Abb., 32–42; *Duncan* v. *Dodd*, 2 Paige, 101; *Stryker* v. *Storm*, 1 Abb. [N. S.], 424; S. C., 3 id., 455; *King* v. *Platt*, 26 Wend., 155, 161.) Geo. W. Hurtin took no title by his purchase as to these defendants. (*Ferris* v. *Crawford*, 2 Den., 595; S. C., 26 Wend., 155; *Acer* v. *Westcott*, 46 N. Y., 384; *Williamson* v. *Brown*, 15 id., 362; *Baker* v. *Bliss*, 39 id., 70, 75, 79; *Warner* v. *Blakeman*, 4 Keyes, 155.) The mortgagees are chargeable with constructive notice of the situation of the property. (*Pringle* v. *Phillips*, 5 Sand. S. C., 151; *Danforth* v. *Dart*, 4 Duer, 101; S. C., 15 N. Y., 157; *Grimstone* v. *Carter*, 3 Paige, 412.) Notice to their attorney was notice to them. (*Griffith* v. *Griffith*, 9 Paige, 315, 317; *Gilbert* v. *Peteler*, 38 N. Y., 165; Willard's Eq., 249; 1 Peters, 309.) Neither the infant nor his guardian will be estopped by the deeds or acts of others. (*Sherman* v. *Wright*, 49 N. Y., 227, 231.)

*C. H. Winfield* for the respondent. In this case no appeal lies to this court. (*McGregor* v. *McGregor*, 32 N. Y., 479; *Clark* v. *City of Rochester*, 7 id., 355.) The discretionary exercise of its powers by the General Term in its review of

the order of the Special Term is not reviewable here. (*Candee* v. *Lord,* 2 N. Y., 269; *Fort* v. *Bard,* 1 id., 43; *Lansing* v. *Russell,* 2 id., 563; *Schermerhorn* v. *Mohawk Bk.,* 1 id., 125; *Van Dewater* v. *Kelsey,* id., 533; *Marvin* v. *Seymour,* id., 535; *Hazleton* v. *Wakeman,* 3 How. Pr., 457; *Buff. Svgs. Bk.* v. *Newton,* 23 N. Y., 160; *Dows* v. *Congdon,* 28 id., 124; *Rowley* v. *Van Benthuysen,* 16 Wend., 372; *Rogers* v. *Hosack,* 18 id., 350.)

CHURCH, Ch. J. The grounds for setting aside judicial sales are more limited here than in England. Mere inadequacy of price, unattended by other circumstances, is not sufficient. A resale will be ordered when there has been fraud or misconduct in the purchaser, or of some person connected with the sale, or for surprise created by the purchaser or other interested person, and inadequacy of price is of greater or less weight, depending upon the other circumstances of the case. (13 Wend., 227; 26 id., 143.)

Where the property rights of infants are concerned, courts will exercise the most vigilant care in protecting their interests, and will hold guardians and all who are engaged in managing or disposing of their property to a rigid adherence to principles of good faith not only, but to a strict performance of every duty. (49 N. Y., 227; 22 Barb., 227; 2 Story Eq. Jur., § 1334.) The defendant, William Mills Hurtin, owned, by virtue of the will of his grandfather, a vested remainder in one-half of the farm, and contingently in the whole, dependent upon the prior death of his brother without issue. He was, therefore, interested in having the premises sold for the largest price which they would bring. He had appeared in the partition suit by a guardian *ad litem,* and the judgment, which we must assume was legal and regular, was as binding upon him as upon the adult parties. The sale would, therefore, cut off his interest in the farm. The farm was worth, and would have brought upon a fair sale, open to competition, from $15,000 to $18,000. It is undisputed in the case, and conceded by

the plaintiff, that by his advice, and with the consent and
assistance of the father and brother, the sale was purposely
arranged to prevent competition, and the premises were bid
off by the brother at the nominal sum of $3,000. That this
was done without any corrupt intent is undoubtedly true.
The good faith of the plaintiff may be conceded, and that
he acted from motives of friendship to the family, believing
that the interests of the minor, as well as the other members
of the family, would in the end be subserved. He states
that the object of the partition was to secure a good title, so
that the farm might be mortgaged to raise money to pay the
claims of the defendant Mills, who had, by a foreclosure,
become the owner of the father's life estate, and other liens
and debts made and incurred by the father and brother, and
to furnish an amount sufficient to stock the farm and put it
in a proper state of cultivation; and that it was represented
to him, and he believed that the father and brother could and
would pay the interest, and eventually the principal of the
mortgages, and then secure by a trust deed the interest of the
minor defendant in the land; and that he undertook the busi-
ness only after the most urgent solicitation on the part of
these parties. These facts, while they may relieve the plain-
tiff from the charge of a wrong intent, do not relieve the sale
from the charge of illegality. The direct effect of the trans-
action was to deprive the minor of four-fifths of his property.
Neither he nor his interest was in any manner holden for
the debts or incumbrances. His share was unincumbered,
and neither the guardian *ad litem* (who was not present at the
sale and did not consent), nor the father or brother, or the
plaintiff, or all together, had any right or power thus to sac-
rifice his property, and rely upon the uncertain, and, from the
amount of incumbrances put upon the farm, visionary success
in carrying it on, and the verbal promise of irresponsible
parties to protect him. The transaction was a fraud, in law,
upon the infant, which cannot for a moment be tolerated by
any court. It was the duty of the plaintiff, and those con-
cerned with him, to have secured to him the full value of his

interest. The idea of benefiting the family is very persuasive as a sentiment, but is too unreal to serve as a justification for doing an illegal act. I agree with the learned judge who delivered the opinion below, in saying: "The infant William Mills Hurtin has not been treated justly. He has been substantially deprived of his inheritance." The learned judge then proceeds with the reasons for denying the motion for a re-sale, upon the ground that the plaintiff, as the purchaser upon the foreclosure of the mortgages given by the brother, after the sale in question, had superior rights to those of the defendant. In this view I cannot concur. The plaintiff was the agent and attorney for both parties in procuring the loans. He acted for the mortgagees as well as the mortgagor. He was cognizant of the facts which in law rendered the sale invalid, and influentially participated in producing them. The judgment and sale to procure the title and the loans and mortgages were so connected together and dependent upon each other as to constitute one transaction on the part of the plaintiff. The mortgagees were, therefore, chargeable with his knowledge of the legal defect in the sale, and could acquire no rights superior to those which he might acquire. The plaintiff was their agent, and it is well settled that notice of facts to an agent is constructive notice thereof to the principal when it is connected with the subject-matter of the agency. (Story on Agency, § 140; *Griffith* v. *Griffith*, 9 Paige, 315.) Giving the plaintiffs, therefore, the benefit of the mortgagees' rights, and assuming that good faith, without notice of the defect in loaning the money upon the apparent title, would be a protection to them and also to the plaintiff, yet his title is subject to the rights of the minor defendant by reason of the constructive notice to them of the facts which invalidated the sale.

The objection is made and strenuously insisted upon that the order denying the motion for a re-sale is not appealable to this court. This point is not without difficulty. Subdivision 3 of section 11 of the Code confers upon this court the power to review an order affecting a substantial right, made

upon a summary application in an action after judgment. That the order is final upon the question, and made upon a summary application after judgment, cannot be disputed, and I think it equally clear that it affects a substantial right. It has been held by this court that an order which charges a party with the payment of a sum of money by way of extra allowance for costs, although by statute made discretionary, is appealable to the General Term, under the statute, to review an order affecting a substantial right. (*People* v. *N. Y. C. R. R. Co.*, 29 N. Y., 418.) There was a difference of opinion as to whether it was appealable to this court. Four of the judges held that it was appealable to the General Term, but not to this court; one that it was appealable both to the General Term and this court; one that it was appealable to neither court, and two took no part. One only of the judges expressed the opinion that such an order did not affect a substantial right, and he defined such a right as follows: "A substantial right is something to which, upon proved or conceded facts, a party may lay claim as matter of law, which a court may not legally refuse, and to which it can be seen that the party is entitled within well-settled rules of law." The prevailing opinions held that the order affected a substantial right because it charged a party with the payment of money. Within this definition an order would affect a substantial right which seriously charged or affected the property of an individual, and in either view the order in question affects a substantial right. Its effect is seriously to interfere with the property of the minor defendant, and it deprives him of a remedy to which he is entitled by established rules of law.

The authorities relied upon by the plaintiff, where this court has refused to entertain an appeal from such an order, do not put it upon the ground that it does not affect a substantial right, but upon the ground that it is discretionary with the court below. Denio, J. (in 23 N. Y., 160), after conceding that the order affected a substantial right, said: "Nevertheless, it was not an order from which an appeal will lie to this

court; it rested purely in the discretion of the court to grant or refuse it." This and some other similar decisions, although entirely correct, have tended, I think, to produce some misapprehension upon this question. That was a case where the owners of the equity of redemption had failed to attend the sale through forgetfulness of the day, and the court below had made an order for a re-sale. The remark of Judge DENIO was, therefore, eminently proper, that such an application upon such grounds rested purely in the discretion of the court below, and was not, therefore, reviewable in this court. In *Wakeman* v. *Price* (3 N. Y., 334), the court dismissed an appeal from a like order for the same reason. The court say : " But such relief, where the proceedings have been regular, cannot be claimed as a matter of right, but simply as a matter of favor. It must, therefore, rest in the discretion of the court to grant or refuse it." The court also say that the same principle was finally settled in the late Court for the Correction of Errors (in 16 Wend., 372 ; 18 id., 350) ; but these were discretionary orders relating to practice. 16 Wend., 372, decided that an appeal would not lie from an order of the Chancellor refusing to vacate an order that a bill be taken *pro confesso,* because it rested in discretion, and the 18th Wend., 350, merely held that where the granting or withholding of costs rests entirely in the discretion of the Chancellor, an appeal will not lie from a decree in respect to such costs. In 2 N. Y., 269, it was held that a motion in chancery for an issue to be tried by a jury is addressed to the discretion of the court, and therefore not appealable. In 3 How. Pr., 357, the appeal from an order of re-sale was dismissed upon the ground that it was discretionary, but the grounds of making the order do not appear. In 28 N. Y., 122, an appeal from an order setting aside a mortgage sale and ordering a reference to ascertain the interest of some of the parties, was dismissed. The court say : " The granting of such an order, when it involves no question of strict legal right, is within the discretionary powers of the court below, and not appealable." The court also held that it did not come

within the third subdivision of section 11, because the order was not final, it being a reference to ascertain certain facts to be afterward reported to the court.

These decisions establish only that orders for a re-sale, made upon grounds which are discretionary, will not be reviewed by this court; but I have found no decision that such orders, when they involve matters of legal right, based upon fixed legal principles, are not appealable.

By the fourth subdivision of the eleventh section of the Code, this court is authorized to review an order affecting a substantial right upon questions of practice which do not involve *any* question of discretion. There is no such prohibition in the third subdivision, nor is there in the 349th section, authorizing appeals from orders to the General Term, and yet it has always been held that that court has power to review orders, although discretionary. (29 N. Y., *supra.*) We are to presume that the Code makers and the legislature, in using the same words in different parts of the Code, meant the same thing. The qualification in third subdivision by the words "affecting a substantial right," does not necessarily operate to prohibit this court from entertaining appeals from orders involving discretion. Otherwise, the prohibition in the fourth subdivision, and the uniform meaning given to the same words in the 349th section, would produce an incongruity which should, if possible, be avoided. The true reason for not entertaining such appeals is based, I apprehend, not upon the restrictions of the Code, but upon the character of the court, and its limited jurisdiction as an appellate tribunal to review questions of law only, except when specially authorized. There is eminent propriety in refraining from the exercise of such a jurisdiction, if not an implied prohibition against it in the Constitution and general powers of the court. This court has acted upon this view in the cases referred to. DENIO, Ch. J., in 29 N. Y. (*supra*), in speaking of the distinction between the General Term and this court, in respect to reviewing discretionary orders, said: "When the case is removed to

another court whose province it is to review determinations in matters of law of the subordinate tribunals, the matter is presented in a different aspect, and it seems to me that we cannot review the discretion of the Supreme Court." Although an order may affect a substantial right, this court will not review it if it is a matter resting in the discretion of the court to refuse or grant it.

The question is whether this is such an order. I think not. It was the legal right of the defendant to have this sale set aside, and this right is apparent from fixed and established rules of law. There was nothing discretionary about it in the proper sense of that term. It was not an application to the favor of the court, nor was it in any just sense modal, nor did it depend upon the credibility of witnesses or the weight of evidence. The sale was irregular. It was conducted contrary to law. The court held that the mortgagees had a superior equity, because they had loaned money upon an apparent title. This, as we have seen, was an error. If the motion had been denied because the defendant had some other ample remedy, the decision would not have been reviewable. Having two remedies, it would have been discretionary to turn him over to either. It is not claimed that he has any other remedy, and the decision was not put upon that ground. The late Court for the Correction of Errors had power to " reverse, affirm or alter any order " brought up on appeal, but it was the settled rule of that court not to review orders resting in the discretion of the subordinate court. The question of what should be deemed discretionary orders was considered by that court in *Tripp* v. *Cook* (26 Wend. 143), upon an appeal from an order refusing to open a sale of mortgaged premises, a case similar to this. The court adopted the opinion of VERPLANCK, Senator, that the order was not discretionary, and was, therefore, reviewable by that court. He adopted and elaborated the definition of that discretion which was not subject to appeal, given by SUTHERLAND, J., in 5 Wend., 125, viz. : " It is that discretion which cannot be

governed by any fixed principles or rules." He maintained
that the appellate court would not consider questions of
practice, nor those of legitimate judicial discretion, and refers
to various instances of such discretion; but he held that the
rules and principles of relief, where property has been sacri-
ficed at judicial sales through fraud or misconduct, had been
settled and established by the courts, and had become fixed
principles of equity which no court was at liberty to disre-
gard. From the nature of the question it is not easy to draw
the line between what is a legitimate exercise of discretion
and what is a reviewable error, nor is it necessary, in this case,
to refine on that subject. A collusive arrangement to pre-
vent competition at a judicial sale, and a sale in pursuance of
such arrangement, to the injury of a party, especially of an
infant, is a fraud in law as well established as any other prin-
ciple of equity jurisprudence, and that subsequent mortgagees
or purchasers, with a knowledge of the fraud, can gain no
advantage therefrom, is equally well settled, and these ques-
tions, when involved in an order, are as much entitled to
review as if presented upon exceptions.

This court, in 37 N. Y., 155, entertained an appeal and
reversed a like order, and this was subsequent to all the cases
in which the orders were held to be discretionary, and,
although able and experienced counsel were engaged, the
question of jurisdiction was not raised. *McCotter* v. *Jay*
(30 N. Y., 80) was an action to set aside a mortgage sale for
want of knowledge of the time and place of sale, but no
fraud was shown. HOGEBOOM, J., in delivering the opinion
of the court, recognized the distinction between orders which
are and are not discretionary. He said, " he shows no fraud,
and cannot, therefore, ask to set aside the sale as a matter of
right," and held that his remedy was a motion addressed to
the favor and discretion of the court. The infancy of the
defendant, and the fact that no superior legal rights have
intervened, are an answer to the objection as to delay in
making the motion. Both upon principle and authority, the
minor defendant is entitled to relief, but such equities of the

plaintiff as can be preserved consistently with his rights should be protected.

The order, as to the defendant, William Mills Hurtin, must be reversed.

ALLEN, J. So much of the order of the court at Special Term, affirmed at General Term, as assumes to limit the rights of the parties to bring an action for relief is clearly erroneous.

A refusal to grant relief upon a summary application is not, except under very special circumstances, which do not exist in this case, a final adjudication of the merits of the controversy and a bar to an action for relief. It will bar another summary application unless leave is given to renew, but will not affect any other remedy. The order appealed from does, by clear implication if not directly, determine in great measure, the rights of the parties in a form which would embarrass, if it did not determine, the merits to the extent of the alleged lien and incumbrance of the plaintiff. The appellants are prohibited from bringing any action, except upon tender or payment of the whole amount claimed by the plaintiff. A tender admits the claim to the amount tendered, and the tenderee may at any time accept it, and the tenderor must keep it good during the prosecution of any action based upon it. If the tender is accepted it cannot be reclaimed. The payment is voluntary and absolute. It follows that in no case could the defendants or either of them, under this order, contest the claim of the plaintiff to his alleged lien and incumbrance upon the whole property and to the full amount.

Again, the order limits the time within which any action may be brought to sixty days, by prescribing that as the time within which the tender or payment must be made. If an equitable cause of action existed, whether a tender was or was not necessary to entitle the parties to prosecute it, the statute of limitations and the established rules of law would control the right as to time, and the court could not arbi-

trarily establish other rules for the particular case. This branch of the order must be reversed.

. The application of the adult defendant, Mills, to set aside the sale of the premises and for a re-sale of the same, or such other order or relief as should be just, was addressed to the discretion of the court of original jurisdiction, and its action is not reviewable here. There was good reason for refusing the application in his behalf. He acquiesced in, if he did not directly assent to, the sale, and at the price for which the premises were sold, and to the subsequent disposition of the proceeds. He has no very apparent reason, upon the papers before us, to complain of any of the actors in the transaction, or of the completed acts of the parties, and there is no injustice in turning him over to his action in such form and for such relief as he shall be advised. He accepted the value of his estate for the life of Alfred D. Hurtin in the premises, and, if there are any circumstances entitling him to relief, they must be established by action. The order refusing his application having been made in the exercise of a legal discretion resting in the court below, and no absolute legal right having been violated, his appeal from so much of the order as refuses his application should be dismissed. As both parties succeed, in part, neither the respondent, nor the appellant, Mills, should receive costs of the appeal as against the other.

The appeal of the infant defendant, William Mills Hurtin, presents other questions. He did not assent and was not capable of assenting to any of the proceedings by which he has been effectually deprived of his reversionary estate in the premises, if the proceedings and sale are allowed to stand. So far as appears, he had no knowledge of them; but this circumstance is of no significance by reason of his incompetency to act. His guardian *ad litem* waived no rights and could waive no rights of the infant. He did not take any part in the sale of the premises, and was powerless to prevent the sale at the fraudulently low price at which they were sold. His only remedy would have been by application to the court,

and he was lulled to inaction by the belief induced by the circumstances and the statements of the plaintiff that the right of the infant to an undivided moiety of the premises was fully cared for and protected. But if he was unfaithful to his trust or colluded with others to wrong the ward of the court, his acts and omissions would not conclude or bind his principal. The sale of the entire estate, the life estate, and the estate of the reversions in gross, for what must be regarded as a mere nominal sum, under the circumstances, and followed by the incumbering of the premises as an entirety, to nearly the full value, by the purchaser, was a gross wrong to the infant. If the age and unprotected condition of the infant, and the unthrift and improvidence of his parents and those who were to protect the property against the incumbrances, be taken into consideration, the mortgages put upon the premises by the purchaser, George W. Hurtin, under the direction and advice of the plaintiff, were equivalent to an absolute sale of the property divested of all claim of the infant, leaving him only the pitiful sum of $1,045 for the one-half of property deemed good security by money lenders for $9,500, and actually worth over $13,000. Had good faith been observed, the undivided half of the premises would have been conveyed, as promised, in trust for the infant, and the purchaser would have paid nothing to the county treasurer for the infant, and for any loans he might make would only have mortgaged his own one-half. It is not disputed by any one connected with this controversy that in equity and good conscience and of right the one-half of the property, subject only to the life estate of A. D. H., or to any charge created by the extinguishment of that life estate, belonged to the infant defendant; and yet, under a scheme concocted and carried out by and under the direction of the present plaintiff and respondent, it was incumbered by and for the benefit of others to an amount and in a form that would necessarily lead to a total loss to the infant of his entire estate. The pretence that by this arrangement the infant, averse to the life of a farmer, would be enabled to obtain an education and enter one

of the learned professions is entirely without foundation. There are other processes by which the estates of infants can be applied to their maintenance and education, and the law will not tolerate a resort to tortuous measures of doubtful propriety, and of great hazard to the interest of the infants, as a substitute for the authorized procedure in which the interests of the infant are well protected and cared for. Whatever might have been the rights and equities of the original mortgagees, as against the infant claimant of a moiety of the mortgaged premises, the present plaintiff, as their successor in interest and the purchaser of the mortgaged premises upon a foreclosure of the mortgages, has no equities as against such claimant.

The mortgagees, who the plaintiff swears were his clients, acting under his advice, were, upon the evidence and under the circumstances, within the rule which holds the principal to the consequences and legal effect of notice to and knowledge by the attorney or agent of facts which, if known to the principal, would affect his rights or create equities in favor of third persons. If this were not so, the plaintiff occupies a peculiar position. As an attorney and counselor of the court and adviser of the parties interested in the property, he originated, advised and consummated the sale and incumbering the property, by which he has been enabled to appropriate to himself, if the proceedings are permitted to stand, the property of this infant. However free from all actual intent to injure or wrong the infant the plaintiff may have been, the legal rights and position of the parties were known to and understood by him, and that it was a gross infringement of the infant's rights, and an improper interference with his property, and putting it at great hazard to deal with it as he advised, could not but have been known to him, and although he may, as he says, have hoped for better results, now that he has acquired a title to the property under his very devious proceedings, he must be held to have taken subject to all the equities of the real owner.

There is not the same objection to entertaining the appeal

of the infant that prevails in the appeal of the other defendant. The infant is the ward, and entitled to the protection of the court upon a summary application as well as in a formal action. The right to relief once established, it is not within the discretion of the court absolutely to reject the summary application and remit the infant to his action. The court may, doubtless, staying adverse proceedings and protecting the subject-matter of the controversy pending the litigation, direct an action to be brought when a formal trial of any disputed questions of fact should be necessary or desirable. But the court, in this case, have absolutely denied the infant all relief, and so restricted and limited his right to bring an action as in effect to deprive him of that right, and place him in a worse position than he would have been without the intervention of the court. There are no disputed questions of fact which go to the equities of the claimant, and he is entitled to relief as a matter of right. The sale of his moiety of the premises was fraudulent, and the proceedings have been oppressive. The sale should be set aside and a re-sale should not be ordered. If the property should be sold for any reason, the sale should be in proceedings instituted under the statutes for the sale of the real estate of infants. The plaintiff and other parties should be at liberty to take any steps to assert and enforce any equities they may have as to the residue of the property and the money deposited with the county treasurer. There are no claims, legal or equitable, disclosed by the papers before us against the infant or his share of the estate. For the money borrowed he is not liable, nor can his estate be charged. The plaintiff, or the mortgagees to whose title he has succeeded, have made no advances to or for the benefit of the infant or his estate. The taxes are to be kept down and paid by the life estate, and not by the reversion. No claim can be made against him or his estate for taxes paid; the owner of the life estate can be compelled to pay them.

I have assumed that the proceedings for a partition were authorized by statute, and valid. It is not necessary to hold

otherwise upon this appeal. The question will come up on the appeal from the judgment. I am, therefore, for dismissing the appeal of the defendant, Edwin Mills, from so much of the order as denies his application for a re-sale of the premises, and reversing the residue of the order as to him, without costs to either party as between him and the respondent, and for reversing the whole order as to the appellant, William Mills Hurtin, granting the motion to set aside the sale of his equal undivided half of the premises under the judgment in partition, and prohibiting a re-sale of the same under the judgment, with costs against the respondent.

CHURCH, Ch. J., ALLEN, PECKHAM and RAPALLO, JJ., concur.

GROVER, J., dissents.

FOLGER and ANDREWS, JJ., do not vote.

Ordered in accordance with opinion of ALLEN, J.